UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EBONY FARR,

        Plaintiff,

    v.

ROSS FINANCIAL SERVICES, INC., and
CARBONDALE LIMITED PARTNERSHIP,
LLP d/b/a The Fields Apartments,

        Defendants.

No. 25-cv-1936-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 26). Plaintiff Ebony Farr has responded to the motion (Doc. 29), and the defendants have replied to that response (Doc. 30).

## I.    Standard for Dismissal

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). Plausibility presents a threshold lower than probability but higher than sheer possibility. *Smith & Wesson Brands v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations. *Bell Atl.*, 550 U.S. at 555. Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77.

## II.    Facts Alleged

Viewing the well-pleaded allegations and the reasonable inferences that can be drawn from them in Farr's favor, the Second Amended Complaint establishes the following relevant facts for purposes of the pending motion to dismiss. In determining the relevant allegations, the Court ignores all prior complaints, which are not operative pleadings in this case. *See Perry v. Coles Cnty., Ill.*, 906 F.3d 583, 586 n.1 (7th Cir. 2018); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

Defendant Carbondale Limited Partnership, LLP owned and operated The Fields residential apartments in Carbondale, Illinois. Defendant Ross Financial Services, Inc. managed The Fields and tenant-related operations.

In June 2023, Ross Financial Services hired Farr to handle certain matters related to The

Fields.  Specifically, her duties included handling tenant files; lease processing; and matters affecting tenant eligibility, recertification, and payments tied to federally subsidized housing programs.  Although she does not plead it, it is reasonable to infer that The Fields was receiving federal housing subsidies for some of its tenants based on their financial situations.

During her tenure at The Fields, Farr observed many instances where she though the defendants were violating federal housing regulations:

- Farr discovered "multiple utility-related checks issued in the name of a tenant who no longer resided at the property" that were kept in the tenant's file and "continued to be generated for months after the tenant had vacated the unit."  She "raised concerns" to Erica Willis and other people in management about why payments were being issued to a tenant who no longer lived in The Fields.  2d Am. Compl. ¶ 11.

- Farr was instructed to send recertification documents and to issue payments to a tenant who no longer resided at The Fields.  Farr refused and "raised concerns" that a non-tenant should not be receiving payments or holding tenancy status after she had moved out and others not on the lease were living in the apartment.  2d Am. Compl. ¶¶ 12 & 13.

- Farr noted that the defendants did not timely process annual recertification documents for tenants, including for a tenant who had reported income and employment and who was later charged a substantial amount of back rent.  Farr "raised concerns" that the tenant had submitted paperwork on time but management's failure to timely process it had caused the issue and that holding the tenant responsible for management's failure violated compliance requirements and resulted in an improper rent calculation.  2d Am. Compl. ¶¶ 14-16.

- Farr noted that some tenants had reported income or employment but management failed to obtain supporting documentation, failed to complete recertification, and failed to adjust rent accordingly.  Management also failed to pursue back rent or to adjust rent to market rates where the tenants were noncompliant.  Farr "raised concerns" to management about these issues.  2d Am. Compl. ¶¶ 18, 20-24.

- Farr observed inconsistent enforcement of lease provisions, with some tenants being cited for violations, threatened with eviction, or otherwise penalized where others who committed the same lease violations were not.  Farr "raised concerns" to management about this inconsistent enforcement.  2d Am. Compl. ¶¶ 25-28.

- Farr saw management permit certain tenants to transfer units or modify leases under circumstances where other tenants were not permitted to do so.  2d Am. Compl. ¶¶ 29-32.

- Farr observed management allow tenants to move into units without required documentation such as income verification and supporting documents.  2d Am. Compl. ¶ 33.

3

- Farr observed management represent that lease changes had been approved and completed but later deny those approvals.  2d Am. Compl. ¶ 34.

Farr "raised concerns" to management about these matters, including her concerns that management was violating "compliance requirements associated with federally subsidized housing programs."  She believed that management's practices "violated program rules and could impact the proper administration of housing funds."  Her "raising concerns" and refusing to perform conduct she thought improper were "undertaken in an effort to prevent violations."  2d Am. Compl. ¶¶ 35-37, 40, & 42-43.

The defendants terminated Farr's employment on February 1, 2024, saying it was because of insubordination.  This occurred after she raised compliance concerns and refused to participate in conduct she believed was improper.  2d Am. Compl. ¶ 44-47.  She lost wages and suffered other financial harm.  2d Am. Compl. ¶ 49.

Farr filed this lawsuit in October 2025 and eventually filed the Second Amended Complaint, the current operative pleading, in April 2026.  In it she asserts one claim:  retaliation under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.  The same day, the defendants asked the Court to dismiss her pleading for failure to state a claim primarily on the grounds that her complaints to management did not suggest concern with any false or fraudulent claim to the United States.

### III.    Analysis

To determine what Farr must plausibly allege in her pleading, the Court considers what she must prove in the long run at trial.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020).  Here, that means looking at the FCA.

The FCA penalizes those who submit or cause to be submitted to the United States fraudulent claims for payment and those who make or use false statements to get a false claim paid. § 3729(a)(1)(A)-(B).  The FCA also prohibits retaliation against those who turn in their employer

4

for violating the act or otherwise try to stop a violation of the act. § 3730(h). It is this final guarantee that Farr invokes in this lawsuit.[1]

> The FCA provision prohibiting retaliation states:

> Any employee . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). A cause of action under this statute has three elements: "(1) the employee's actions were in furtherance of a FCA action or preventing a FCA violation (protected conduct requirement); (2) the employer knew the employee engaged in protected conduct (notice requirement); and (3) the employer took a retaliatory action in response." *Lewis v. AbbVie Inc.*, 152 F.4th 807, 813 (7th Cir. 2025).

The second element requires the employee to put the employer on notice that she reasonably suspected the employer was defrauding the United States in violation of § 3729 of the FCA. *Id.* So an FCA retaliation plaintiff must allege in her complaint facts plausibly suggesting her employer was "on notice" of her suspicion that it was defrauding the United States in violation of the FCA. *Id.* at 814.

> [She] need not have knowledge of the FCA, nor utter any magic words like "False Claims Act," but [she] must make it clear that [her] complaints were "aimed at preventing the [employer's] submission of false or fraudulent claims" to the government. *Singletary v. Howard*, 939 F.3d 287, 300 (D.C. Cir. 2019). "[M]erely informing an employer it is not complying with a statutory, regulatory, or contractual requirement" is not sufficient. *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co., Inc.*, 48 F.4th 1146, 1160 (10th Cir. 2022).

---

[1] When Farr originally filed this lawsuit in October 2025 (Doc. 2), she indicated it was a *qui tam* action seeking to rectify false or fraudulent claims against the United States. *See* 31 U.S.C. §§ 3729 & 3730(b). However, she did not bring the claim in the name of the United States government, as required by 31 U.S.C. § 3730(b)(1), and did not seek a remedy for wrongs against the United States. Instead, she asserted that her termination was retaliatory and sought only damages for her own personal losses.

*Id.* Merely trying to convince an employer to comply with federal regulations does not put an employer on notice of potential FCA litigation and is, in fact, not conduct protected by the FCA. *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 945 (7th Cir. 2002); *see Lewis*, 152 F.4th at 814-15 (noting, "where an employee whistle blows on the firm directly submitting false claims, satisfying notice is practically co-extensive with the protected conduct element").

*Lewis* is instructive. In that case, a pharmaceutical company was marketing one of its drugs to medical providers for off-label, non-approved uses. *Lewis*, 152 F.4th at 811. Because of the prevalence of patients on Medicare or Medicaid, those providers were likely then to file Medicare and Medicaid claims for payment by the United States for off-label prescriptions. But government insurance programs like Medicare and Medicaid do not cover prescriptions for off-label uses, so those claims would be "false." *Id.* To minimize sales for off-label uses, the Food, Drug, and Cosmetic Act ("FDCA") and its regulations prohibit pharmaceutical companies from marketing off-label uses to medical providers. *Id.* at 810-11.

A pharmaceutical salesperson became concerned that his pharmaceutical company employer was improperly marketing drugs for off-label uses to medical providers in violation of FDCA regulations and creating circumstances where medical providers were likely to file false claims. *Id.* at 811. The salesperson complained to his direct supervisor and to the Human Resources Department about his concerns that the off-label marketing initiative did not comply with regulations and was illegal. *Id.* at 812. But he "never framed his internal grievances as related to defrauding the government through the off-label campaign. Instead, he complained of regulatory risks." *Id.* As a consequence of his complaints, he was not promoted and was assigned excessive work. *Id.*

The Court of Appeals affirmed the District Court's decision dismissing the employee's § 3730(h) retaliation case at the pleading stage. *Id.* at 813. The Court of Appeals concluded,

6

"Because [the employee's] internal complaints to [the employer] never suggested that *his* concern was fraud-based, rather than rooted in regulatory violations, [the employer] was not on notice that [the employee] sought to prevent any FCA violations." *Id.*  The Court held that the plaintiff had not pleaded enough to plausibly suggest the second element of an FCA retaliation claim—notice that the employee was engaging in protected conduct, *id.* at 814, or that he had engaged in protected conduct, *id.* at 815.

*Lewis* dictates the result of the pending motion to dismiss.  As in that case, none of the internal complaints Farr made suggested that she was concerned with fraud against the United States as opposed to mere noncompliance with applicable regulations.  Thus, she fails to allege facts that plausibly suggest she was acting "in furtherance of an action under" the FCA, 21 U.S.C. § 3730(h)(1), or that the defendants were on notice that she was engaging in protected conduct by seeking to prevent an FCA violation.  *See Lewis*, 152 F.4th at 813.  The Court must therefore dismiss the Second Amended Complaint for failure to state a claim.

In her response to the motion to dismiss, Farr comes closer to alleging she was concerned with fraud on the United States; she appears to believe that when she complained about noncompliance with regulations relating to federal reimbursement, she must have been complaining about fraud on the United States and raising the possibility she would report it in furtherance of an FCA action.  But she ignores the fact that those connections are not pleaded in the Second Amended Complaint and that they still do not plausibly suggest the defendants were aware she was acting in furtherance of an FCA action.  Importantly, her claim is for retaliation, not for a substantive FCA violation, so the defendants' awareness of her inclination to report them to the United States is essential.  Under *Lewis*, notice to the defendants that she was acting in furtherance of an FCA action must be plausibly pleaded.  Under her current allegations, it is not.

The Court will dismiss the Second Amended Complaint.  However, it will do so without

7

prejudice and will give Farr one final opportunity to amend her complaint to allege facts bringing her claim within § 3730(h) of the FCA.  If she is unable to plead sufficient facts to plausibly suggest retaliation under the FCA, the Court will dismiss this case with prejudice and will not likely allow her a further opportunity to amend.  *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (court may deny leave to amend where plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed).

## IV.    E-Filing Status

The Court addresses one final matter—Farr's status as a *pro se* CM/ECF User.  The Court granted her CM/ECF User status in December 2025.  Since then, she has been sent others' filings electronically, but she continues to tender paper documents to the Clerk's Office for filing (*see* Docs. 14, 15, 19, 21, 23, 25, 28, & 29).  In fact, in the entire seven months she has been a CM/ECF User, she has not once electronically filed any document.  This is inconsistent with the spirit and purpose of allowing her to be a *pro se* CM/ECF.  CM/ECF Users are expected to docket their own filings rather than using Clerk's Office resources to docket them.  The *Pro Se* Litigant Guide provides as much:

> If you are granted *Pro Se* Filing User Privileges, the Clerk's Office will not accept any future paper copies of pleadings for filing on your behalf, nor will it mail paper copies of any pleadings to you.  You will be responsible for filing your pleadings via the ECF system according to the Electronic Case Filing Rules located on the Court's website and will only receive electronic notice of pleadings that are filed.

*Pro Se* Litigant Guide, Section V (Dec. 2023), available at https://www.ilsd.uscourts.gov/forms-0.

On April 22, 2026, the Court ordered Farr to show cause why it should not revoke her CM/ECF User status in light of her persistent refusal to file her documents electronically (Doc. 27). In response, Farr stated that she has not electronically filed her documents because she has had technical difficulties with CM/ECF that she has not been able to resolve (Doc. 28).  She says she attached screenshots and documentation of her problems, but she has not.

This is an insufficient reason not to revoke Farr's CM/ECF User privileges.  It is clear that she is not equipped to utilize the CM/ECF system as envisioned by the CM/ECF Rules and the *Pro Se* Litigant Guide.  Accordingly, the Court will revoke her *pro se* CM/ECF User status effective immediately after electronic transmission of this order to her.  She may continue to file paper documents by personal delivery or by U.S. Mail.  *See* SDIL-LR App'x D, ECF Filing Rule 1, available at https://www.ilsd.uscourts.gov/electronic-case-filing.  The Court will no longer electronically send her copies of docket filings.

## V.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motion to dismiss (Doc. 26);

- **DISMISSES** the Second Amended Complaint **without prejudice** (Doc. 25);

- **ORDERS** that Farr shall have 21 days from entry of this order to file a Third Amended Complaint adequately pleading a cause of action for retaliation under the FCA that meets the requirements set forth in *Lewis*.  The Court **WARNS** Farr that if the Third Amended Complaint fails to state a claim, the Court is unlikely to allow further amendment and will likely dismiss this case with prejudice; and

- **REVOKES** Farr's *pro se* CM/ECF User privileges effective immediately after electronic transmission of this order, and **DIRECTS** the Clerk's Office to terminate Farr's user account in CM/ECF and to resume mailing paper copies of Court notices and orders to her.

**IT IS SO ORDERED.**
**DATED:  July 27, 2026**

**J. PHIL GILBERT**
**DISTRICT JUDGE**